UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Kimberly J. Chaney,

        Plaintiff(s),

v.

Eberspaecher North America,

        Defendant(s).

Case No. 12-13023

Honorable Nancy G. Edmunds

                                /

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]**

The motion for summary judgment before the Court pertains to a lawsuit brought by Plaintiff Kimberly Chaney against her former employer, Defendant Eberspaecher North America for alleged violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* Plaintiff alleges that Defendant improperly interfered with her right to take leave under the FMLA, and that she was discriminated against for exercising her rights thereunder. Defendant moves for summary judgment on both of Plaintiff's claims. For the reasons set for below, Defendant's motion is GRANTED IN PART and DENIED IN PART.[1]

---

[1]While this motion was pending, the Supreme Court ruled on *Univ. Of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. ___ (2013). *Nassar* made clear that "Title VII retaliation claims must be proved according to the traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)." *Id.* This case was brought under the FMLA, not Title VII, and as such, the *Nassar* decision, while informative, did not change any applicable standards.

## I.      FACTS

Defendant is a corporation that manufactures automobile parts. Def.'s Mot. Summ. J. at 1. Plaintiff began working for Defendant in February of 2008 as a temporary employee. Pl.'s Resp. to Def.'s Mot. Summ. J. at 1. She was subsequently hired as a permanent employee in August 2008. *Id.* Plaintiff was then partially laid off in December 2008, and permanently laid off in April 2009, only to be rehired in January 2010. *Id.* While Plaintiff's initial work assignment was at Defendant's Brighton, Michigan plant, when she was rehired in 2010, she was assigned to Defendant's Wixom, Michigan plant. *Id.*

Plaintiff injured her shoulder on the job in May 2010 and was placed on a medical work restriction. *Id.* at 3. Defendant accommodated Plaintiff's restriction by changing her work assignment appropriately, but Plaintiff eventually required surgery to address the injury. *Id.* at 3-4. Plaintiff underwent surgery on March 15, 2011, and when she returned to work approximately two weeks later, she continued on with a medically restricted work assignment. *Id.*

Defendant has a comprehensive attendance policy, often referred to as a "no-fault" attendance policy.   Def.'s Mot. at 2. Specifically, Defendant tracks its employees' attendance and assesses one point for each unexcused absence and half-a-point for each unexcused lateness or early departure from work. *Id.* at 2. An employee is terminated, without exception, upon the accumulation of five attendance points.[2] *Id.*

---

[2]Defendant notes that the attendance policy is implemented so vigorously and with such strict adherence to the five point system that in one instance, the sons of Randy Gibson, Plaintiff's supervisor, were terminated under the no-fault attendance rules. Def.'s Mot. at 2.

Employees can request time off in advance for approved reasons, but, in the event of an unforeseen absence, the employee must provide documentation "no later than the date of [the employee's] return to work" to certify that the absence qualifies for excusal or the employee will receive a point for each unapproved day off. *Id.*

Defendant also has a policy for administering leave under the FMLA. *Id.* at 4. Defendant's FMLA policy reads, in pertinent part, as follows:

> All employees requesting FMLA leave must provide verbal or written notice of the  need for the leave to the HR manager. Within five business days after the employee has provided this notice, the HR manager will complete and provide the employee with the DOL Notice of Eligibility and Rights.

> When the need for the leave is foreseeable, the employee must provide the employer with at least 30 days' notice. When an employee becomes aware of a need for FMLA leave less than 30 days in advance, the employee must provide notice for the need for the leave either the same day or the next business day. When the need for FMLA leave is not foreseeable, the employee must comply with the Company's usual and customary notice and procedural requirements for requesting leave, absent any unusual circumstances.

Def.'s Mot., Ex. 8, p. 6. Additionally, it is Defendant's practice, although not explicitly laid out anywhere, to run worker's compensation leave concurrently with FMLA leave. Def.'s Mot. at 4. Defendant calculates an employee's available FMLA leave by counting back one year from the date of the requested leave.[3] Pl.'s Resp. at 9.

Defendant's "usual and customary" practice for requesting leave after an unforeseen absence, as noted above, requires submission of documentary proof for the absence no later than the day an employee returns to work. Def.'s Mot. at 3.

Plaintiff appropriately requested, and Defendant granted, FMLA leave in March

---

[3]This is known as the rolling twelve-month method, and it is one of four acceptable FMLA leave calculation options laid out in 29 C.F.R. § 825.200(b).

2011 for Plaintiff's work-injury-related shoulder surgery. Pl.'s Resp. at 4. Specifically, Defendant's Human Resources Manager Cheryl Lipan processed Plaintiff's FMLA request for time off from March 15, 2011 through March 30, 2011. *Id.* On May 2, 2011, approximately seven weeks after returning to work, Plaintiff complained of pain in her injured shoulder and left work early to see her doctor. *Id.* at 4-5. Plaintiff returned to work on May 5, 2011 with a note from her doctor stating that she was not to work on May 3 or 4, 2011 because of complications from her recent shoulder surgery. *Id.* In deposition testimony, Ms. Lipan acknowledged that Plaintiff provided the requisite documentation to certify the absences as medically excused for the purposes of workmen's compensation and the FMLA. Pl.'s Resp., Ex. E, Dep. of Cheryl Lipan, January 9, 2013, p. 33. Ms. Lipan further testified that she understood that the May 3 and May 4 absences were "related to [Plaintiff's] shoulder injury...[and that they] were related to [Plaintiff's] workmen's comp issue." Lipan Dep. at 34. Nevertheless, Defendant assessed Plaintiff two attendance points for her May 3 and May 4 absences. Pl.'s Resp. at 6. Plaintiff protested the points by refusing to sign the acknowledgment form that customarily accompanies the assessment of attendance points. *Id.* Defendant insists that according to its attendance tracking software, Plaintiff did not have any FMLA leave available in May 2011. Lipan Dep. at 44-47. Defendant also states that Plaintiff did not fill out the proper form to request FMLA leave, Def.'s Rep. at 2, but during her deposition, Ms. Lipan also stated that FMLA leave "wasn't offered to [Plaintiff]" for the May 3 and May 4 absences. *Id.* at 72.

In the time between May 6, 2011 and October 2011, Plaintiff missed several days of work, many of which were covered by FMLA and workmen's compensation or were

excused absences under Defendant's attendance policy. Def.'s Mot. Ex. 10, p. 14-19. During that time, however, Plaintiff also accumulated three more no-fault attendance points, bringing her to five points and resulting in her termination on October 21, 2011. *Id.* There is no dispute that the three points Plaintiff received after May 6, 2011 were appropriately assessed under Defendant's attendance policy.

Plaintiff brought this lawsuit on July 10, 2012, claiming interference with her right to take FMLA leave and retaliation or discrimination for exercising her FMLA rights. Defendant now moves for summary judgment.

## II.     ANALYSIS

### A. The Standard  on Motion for Summary Judgment

The Sixth Circuit recently reiterated the familiar standard for summary judgment, stating that summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that

"[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### B. Prohibited Employment Practices Under the FMLA

Under the FMLA, eligible employees are entitled to twelve work-weeks of leave in a given twelve month period. 29. U.S.C. § 2612(a) (West 2013). In order to protect this entitlement, the FMLA provides for two distinct avenues of recovery from an employer who interferes with or discriminates against an employee with regard to his or her rights under the law. Specifically, the FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter" and that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1) & (2) (West 2013).

Here, Plaintiff claims that Defendant violated both of these prohibitions when it terminated her based on the accumulation of attendance points, because two of the points were applied to her record for absences that allegedly should have been protected by the FMLA. In other words, Plaintiff claims that Defendant interfered with her right to take FMLA protected leave by denying her request for time off and assessing attendance points that eventually contributed to her termination. Plaintiff further claims that Defendant discriminated against her under the FMLA by assessing attendance points and eventually terminating her employment, based in part on those points, in retaliation for attempting to exercise her FMLA rights.

**C. Defendant's Motion for Summary Judgment is Denied as to Plaintiff's FMLA Interference Claim**

In *Donald v. Sybra, Inc.,* 667 F.3d 757 (6th Cir. 2012), the Sixth Circuit revisited the standard for claims of both interference and discrimination under the FMLA. In order to establish a *prima facie* case of FMLA interference, Plaintiff must show that:

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Donald*, 667 F.3d at 761.

There is no dispute as to the first two factors above. Factors three through five, however, are at the root of the parties' dispute. Specifically, Plaintiff claims that she was entitled to FMLA leave for May 3 and May 4, that she notified Defendant appropriately on her first day back at work, and that she was nevertheless denied the FMLA leave. Defendant maintains that FMLA leave was appropriately denied for Plaintiff's May 3 and May 4 absences because she did not have any available FMLA leave at the time and she did not provide the requisite notice under the law or company policy.

A review of the record, specifically, the time card report produced by Defendant and the deposition testimony of Defendant's Human Resources Manager Cheryl Lipan, viewed in the light most favorable to Plaintiff, militates in favor of denying summary judgment on the issue of FMLA interference. Specifically, using Defendant's preferred "rolling twelve-month" method, the Court calculates that on May 3, 2011, Plaintiff had

approximately 228 hours, or 28 and a half days, of FMLA leave available.[4]

Defendant insists that the appropriate rolling twelve-month period for calculating Plaintiff's available FMLA leave is October 21, 2010 through October 21, 2011. The dispute in this case, however, concerns the denial of FMLA leave on May 3 and May 4, 2011. In pertinent part, the relevant federal regulation states that under "the 'rolling' 12–month period, each time an employee takes FMLA leave the remaining leave entitlement would be any balance of the 12 weeks which has not been used during the immediately preceding 12 months." 29 C.F.R. § 825.200(c) (West).

While Plaintiff was terminated on October 21, 2011, it is her contention that but for the two attendance points allegedly incorrectly assessed in May 2011, she would not have been terminated in October. The focus of this inquiry, therefore, is the availability of FMLA leave in May 2011, rendering irrelevant Defendant's proposed rolling twelve-month period of October 2010 through October 2011.

Defendant also argues that Plaintiff received the full twelve weeks of FMLA leave to which she was entitled, and that as such, her claim of interference must fail as a matter of law. Once again, however, Defendant is focused on the wrong time frame. It is of little to no relevance to these proceedings how much FMLA leave Plaintiff received *after* her May 2011 absences. Rather, if Plaintiff had not yet exhausted her FMLA leave by May 3, and assuming she provided appropriate notice, then she was improperly given two attendance points for her absence in May. That, in turn, means that her

---

[4]Counting back one year from May 3, 2011, the Court counts 252 hours of FMLA leave used by Plaintiff. Under the FMLA, an employee is entitled to 480 hours of leave. *See generally* 29 C.F.R. § 825.200. 480 initial FMLA hours less 252 used FMLA hours leaves Plaintiff with 228 hours of FMLA leave.

termination in October was partially based on incorrectly issued points for absences that should have been covered by the FLMA. Under Sixth Circuit jurisprudence, "a termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA." *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 726 (6th Cir. 2003) *Cavin* further states that "[t]he regulations clearly provide that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." *Id.* (internal citations omitted).

Furthermore, as noted above, Ms. Lipan acknowledged receipt of Plaintiff's requisite documentation with the understanding that the time off was related to Plaintiff's "workmen's comp issue," which, under Defendant's own policy, should have triggered FMLA leave automatically. Ms. Lipan's statements are more than a mere scintilla of evidence in support of Plaintiff's claims. Indeed, Ms. Lipan's statements create a genuine issue of material fact as to whether or not Defendant received appropriate notice regarding Plaintiff's FMLA leave.

Defendant makes much of the fact the Plaintiff did not fill out the proper paperwork to request FMLA leave and that she did not call in to notify anyone of her unforeseen absences. However, if, as Defendant insists, Plaintiff was denied the leave because none was available, then she would have been denied the leave even if she had filled out the proper form. Ms. Lipan, Defendant's human resources manager, testified that she  understood that Plaintiff was attempting to exercise her FMLA rights and that Plaintiff not only called Defendant's "call-in" line, but that Plaintiff called her personally.

9

Lipan Dep. at 44-47 Ms. Lipan is on record as stating that she told Plaintiff the FMLA time was not available. *Id.* Under those circumstances, and drawing inferences with regard to Defendant being on notice of Plaintiff's need for FMLA leave in her favor, the absence of a formal FMLA request - what ultimately amounts to a piece of paper - is not fatal to Plaintiff's FMLA interference claim.

In the light most favorable to her, Plaintiff has established a *prima facie* case of FMLA interference, and has pointed to sufficient evidence on the record to create a genuine issue of material fact, in particular with regard to whether or not she provided Defendant with sufficient notice for her denied FMLA leave, and whether or not she had any FMLA leave available during the time frame in question. Therefore, Defendant's motion for summary judgment is DENIED as to Plaintiff's claim of FMLA interference.

### D. Defendant's Motion for Summary Judgment is Granted as to Plaintiff's FMLA Discrimination Claim

As noted above, the Sixth Circuit recently addressed the standards of review for FMLA interference and discrimination claims in *Donald v. Sybra, Inc.,* 667 F.3d 757. To establish a *prima facie* case of FMLA discrimination, Plaintiff must show that:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald*, 667 F.3d at 761.

Viewed in the light most favorable to her, Plaintiff has established the first three prongs of the discrimination standard. Specifically, Plaintiff has demonstrated (1) that she took time off from work to deal with her ongoing shoulder injury, (2) that she

provided Defendant with notice as to the FMLA nature of the time off, and (3) that she was assessed points for that time off, and that as a result of those points, in part, she was terminated.

Nevertheless, as discussed below, even if Plaintiff could meet the causation requirement of a *prima facie* discrimination case, the honest belief rule undermines the causative implications of the evidence. The crux of Plaintiff's argument as to causation is the temporal proximity of the exercise of her FMLA rights and her termination. Plaintiff points to *Seeger v. Cincinnati Bell Telephone Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012) for the proposition that temporal proximity alone is enough to establish the requisite implication of causation for a *prima facie* retaliation case. Plaintiff's case, however, differs from *Seeger* in that where Seeger was terminated less than two months after engaging in protected conduct, here, almost six months passed between Plaintiff's attempt to exercise her FMLA rights and her termination. *Id.*

The Sixth Circuit has weighed in on the use of temporal proximity to establish causation in an employment discrimination context stating that:

> [w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool and Die Co.,*  516 F.3d 516, 525 (6th Cir. 2008). In *Mickey*, the court found the temporal proximity between the protected conduct and the adverse employment action to be indicative of a causal connection between the two, but in that

case, the plaintiff was fired the same day his employer learned of the protected conduct. *Id.*

As the time frame used for establishing causation expands, the law on the matter becomes less settled. For instance, in *Newton v. Ohio Dept. of Rehab. & Correction–Toledo Corr. Inst.*, No. 11–3681, 2012 WL 3631493, at *8 (6th Cir. Aug.23, 2012), the Sixth Circuit stated that "temporal proximity alone may not support an inference of retaliatory discrimination absent other compelling evidence" and, absent such additional evidence, deemed one month proximity insufficient to support a retaliation claim at summary judgment. However, in *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir.2004), the Sixth Circuit stated that "in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."

As for what satisfies the idea of "acutely near in time," the Sixth Circuit tends to make more general pronouncements. *See, e.g.*, *Akers v. County of Bell*, No. 10–5513, 2012 WL 3518561, at *4 (6th Cir. Aug.15, 2012) (stating "[t]his Court has found a causal link when the temporal gap is short, generally fewer than six months."), and; *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 550 (6th Cir. 2008) (noting that "[i]n this circuit, a period of more than four months was found to be too long to support an inference of causation.").

Here, five-and-a-half months passed between Plaintiff's exercise of protected rights and her termination, which, without more, cannot be said to be "acutely near in time." Plaintiff argues that her temporal proximity argument is strengthened to the point

of viability when taken together with that fact that she had a good employment record prior to May 2011. Plaintiff's argument is of no avail. There is no dispute that Defendant, for better or worse, very strictly administers its attendance policy. Nor is there any dispute around the legitimacy of the three attendance points Plaintiff accumulated between May 6 and October 21, 2011. Plaintiff does not point to anything to successfully bolster her temporal proximity argument when framing the situation to define the adverse employment action as her termination. Through that lens, a time span of almost six months does not meet the *prima facie* causation requirement for making out a discrimination claim under the FMLA.

That being said, Plaintiff seems to also suggest that, for the purposes of determining causation via temporal proximity, the date in May that she was assessed two of the attendance points that eventually led to her termination should be considered. Defendant, in its reply brief, argues that the denial of time off is not an adverse employment action in-and-of-itself. Defendant notes that upon returning to work on May 5, 2011, "Plaintiff was not disciplined in any way except for incurring attendance points, which is not an adverse employment action." Def.'s Rep. at 4. In support of this proposition, Defendant cites to *Carlson v. Leprino Foods Co.,* 522 F. Supp. 2d 883 (W.D. Mich. 2007). A closer look at *Carlson* reveals the following, highly relevant passage:

> This is not a case about the mere failure to grant requested days off. This is a case about termination of employment. It is certainly well established that "[m]ere inconvenience or an alteration of job responsibilities" is not, standing alone, an adverse employment action. Similarly, denial of leave requests or specific days off, standing alone, do not amount to materially adverse employment actions. But Plaintiff is not simply arguing that Defendant's failure to grant days off was adverse employment action. He

13

> is arguing that Defendant refused to grant his requests for days off, which
> resulted in his accumulation of attendance points, which resulted in his
> termination, which is an adverse employment action.

*Carlson*, 522 F.Supp.2d at 888 (internal citations omitted). While *Carlson* addresses the

Fair Labor Standards Act, this Court is of the opinion that the reasoning therein is sound

and, given the context of employment discrimination by way of attendance points, is

applicable to Plaintiff's FMLA claims. In this case, Plaintiff has suffered an "adverse

employment action" under the FMLA because Defendant's allegedly improper denial of

Plaintiff's request for time off resulted in the accumulation of attendance points that

subsequently resulted in Plaintiff's termination.

Here, Plaintiff was assessed two attendance points almost immediately upon

returning to work after exercising FMLA protected rights, and those points directly

contributed to her termination. Plaintiff has established a sufficient implication of

causation for making a *prima facie* case of FMLA discrimination. However, because

Plaintiff met the causation requirement via indirect evidence of discrimination under

FMLA, the Court must employ the McDonnell-Douglas burden shifting framework to

complete the discrimination analysis. *Jaszczyszyn v. Advantage Health Physician

Network*, 504 Fed. App'x 440, 447 (6th Cir. 2012).

### i. McDonnell Douglas Burden-Shifting Framework

In *Jaszczyszyn,* 504 Fed. App'x at 447, the Sixth Circuit stated that "[t]here is no

doubt that this Court applies the McDonnell Douglas burden-shifting framework to FMLA

retaliation suits when the plaintiff produces indirect evidence of a causal connection

between the protected activity and the adverse employment action."

Under the McDonnell-Douglas framework, when a plaintiff establishes a *prima*

*facie* FMLA discrimination case via indirect evidence of causation:

> the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions. The defendant bears only the burden of production; the burden of persuasion remains with the plaintiff at all times. If the defendant articulates such a reason, the plaintiff may then show that the defendant's stated reason is merely a pretext for discrimination. A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. The plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants ... did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action. To show an honest belief, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.

*Mickey*, 516 F.3d at 526 (internal quotations and citations omitted).

The Sixth Circuit has further explained the rationale behind the "honest belief" rule:

> reasoning that it is not in the interests of justice for us to wade into an employer's decision making process. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007). It is instead the employer's belief, and whether it is informed and nondiscriminatory, with which we are concerned. We do not require that the employer arrived at its decision in an "optimal" matter, *id.* at 599, but that it "reasonably relied on the particularized facts that were before it at the time the decision was made." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (internal quotation marks omitted).

*Donald, 667 F.3d at 763.*

Here, Plaintiff's arguments fail her. While it may be true that Defendant's adverse action had no basis in fact, given that Plaintiff may have had FMLA leave available in May 2011, it appears from the deposition testimony that Defendant was under the honest belief that she had no FMLA leave available. Lipan Dep. at 44-47. Specifically, Ms. Lipan testified as to her belief that Plaintiff did not have FMLA leave available, and that that belief was based on information provided by Defendant's computerized record

keeping system. *Id.* Plaintiff has not offered any evidence that suggests anything other than a scenario in which Defendant reasonably relied on the mistaken belief that Plaintiff had no FMLA leave available, and by its own policies, had no choice but to assess her two attendance points. As noted above, the Court "does not require that the employer arrived at its decision in an optimal matter, but that it reasonably relied on the particularized facts that were before it at the time the decision was made." *Donald, 667 F.3d at 763*. Here, in any light, it appears that Defendant arrived at its decision by reasonably relying on its human resources manager's knowledge of facts gained through Defendant's record keeping system and personal interactions with Plaintiff. It is unfortunate that the records relied on by Defendant may have been incorrect, but poor record keeping does not rise to the level of FMLA discrimination, and the honest belief rule is designed to guide a court to just such a conclusion.

For the reasons stated above and having viewed the evidence in the light most favorable to her, Plaintiff has failed to make a *prima facie* case of FMLA discrimination regardless of the date used as a reference point. Therefore, Defendant's motion for summary judgment is GRANTED as to Plaintiff's FMLA discrimination claim.

## III.  CONCLUSION

For the reasons discussed above, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment. Specifically, the Court GRANTS Defendant's motion with respect to Plaintiff's Family and Medical Leave Act discrimination claim, and the Court DENIES Defendant's motion with regard Plaintiff's Family and Medical Leave Act interference claim.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  July 8, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 8, 2013, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol Hemeyer